GABRIEL S. GRAY *vs.* THE BOROUGH OF DANBURY AND THE NEW YORK & NEW ENGLAND RAILROAD COMPANY.

Fairfield Co., Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

A railroad was carried over a street in a borough by a bridge, which was built at a height above the street directed by the borough and approved by the railroad commissioners. Afterwards the road-bed was raised fourteen inches, in part from natural causes and in part from the placing of gravel thereon by the borough. The plaintiff, in passing under the bridge upon a load, was injured, without negligence on his part, by his head striking an iron truss of the bridge. The railroad company was found to have been guilty of no negligence, but the borough to have been negligent in causing or permitting the road-bed to be filled up till the space under the bridge was insufficient. Held that the borough was liable for the injury, and that there was no liability on the part of the railroad company.

The railroad company was clearly not bound to raise the bridge from year to year as the street was raised, and was not bound to remove the earth and gravel placed there by the borough. The borough alone could make repairs, and it alone was responsible for doing it improperly.

There is no law that fixes the height of railroad bridges over highways. It should be sufficient to reasonably accommodate the public travel, and what is reasonable must depend in some measure upon the circumstances of each case.

Where the railroad company, its engineers, the railroad commissioners,

and the borough within which the highway lay, regarded the height of the bridge sufficient when made, and the injury was attributable wholly to the raising of the road-bed below, it was held that the court below was justified in finding that the railroad company had been guilty of no negligence in the original construction of the bridge.

The statute (Gen. Statutes, p. 324, sec. 30) provides that railroad companies at all crossings of highways shall make and maintain such bridges, embankments and approaches as the convenience and safety of the public travel on the highway may require. Held that this statute imposed no duty upon the railroad company, when the bridge was once properly made, to maintain the highway in such condition as should prevent the bridge from interfering with public travel.

The existence of a railroad interfering with a highway, although the company may have done all that is required of them by statute, will often impose additional burdens upon towns in maintaining highways, but this expense the towns may reasonably be required to bear.

The statute (Gen. Statutes, p. 232, sec. 10) provides that when an injury is caused by a structure legally placed on a highway by a railway company, the company, and not the party bound to keep the road in repair, shall be liable therefor. Held not intended to apply to a case where the structure was a bridge over the highway, and the injury resulted wholly from the negligence of the party bound to keep the highway below it in repair.

(Argued January 5th—decided February 11th, 1887.)

ACTION for an injury from a defective highway of the defendant borough and a defective bridge of the defendant railroad company; brought to the Superior Court in Fairfield County. Each of the defendants suffered a default, and the case was heard in damages before *Andrews, J.,* and the following facts found:—

The borough of Danbury is by law bound to maintain and keep in repair all the highways within its limits. West street in it is a much traveled public highway, formerly an ancient town road, leading westerly from the borough. In the year 1880 the New York & New England Railroad Company constructed its track, by a substantial iron bridge, over West street and within the borough. The borough at the time, in view of its liability for the highway, insisted that the bridge should be built according to its wishes; and such negotiations were had between the borough and the railroad company, that the bridge was built upon plans furnished or approved by the borough, and was put at such a

height above the ground as was required by the borough. The bridge consists of three spans. Under the south span a small stream of water flows. The other two spans are so constructed that public travel can pass under them. The north span is about seventeen feet wide, and its height above the ground was, at the time the bridge was built, about twelve and a half feet. The middle span is twenty-eight feet wide. Its height above the ground under it, owing partly to the level of the ground and partly to the construction of the bridge, was never greater than about ten and a half feet. Soon after the bridge was completed the borough put the ground under the north and the middle spans into suitable condition for public travel. The pier which stands between these two spans of the bridge so divided the former highway that the straight line of travel is under the middle span. The north span, while open and available for travel, is almost entirely abandoned. Almost the entire travel that goes under the bridge passes under the middle span. For all practical purposes the middle span is the highway.

Approaching the bridge from the west along the highway, the ground descends to, or nearly to, the bridge itself. The sand and earth had washed down the hill and been deposited under the bridge, and in repairing the highway the persons employed by the borough had placed earth and other material along both sides of and under the bridge from time to time, to so great an extent that at the time of the injury complained of the vertical space under the middle span had become reduced to nine feet and four inches. The highway was thereby made defective, insufficient and dangerous for public travel.

On the 27th of March, 1883, the plaintiff was coming from Mill Plain, a village about four miles west of the borough, to the borough, with a medium-sized load of hay on a large farm wagon arranged with hay-rigging. The load was drawn by two horses, one ten years old and the other twenty-eight, and both well-broken and gentle. The plaintiff was sitting on the forward end of the load, driving. He

came safely to a point about one-eighth of a mile westerly from the bridge. He was descending the hill, when in attempting to hold in his horses to a walk, the right-hand rein broke. The team became unmanageable, ran swiftly down the hill, keeping in the regular line of travel, and went under the middle span of the bridge. The plaintiff had no time to get off the load or to help himself in any way. His head was brought into violent contact with the lower iron truss of the bridge. He was knocked off the wagon into the road, made senseless, and was seriously and permanently injured.

The plaintiff was guilty of no negligence in respect to his harness, his team, or his own conduct. The railroad company was guilty of no negligence. The borough was negligent in causing or permitting the roadway under the bridge to be filled up till the space under it was too small to satisfy the requirements of common convenience and necessity. The injuries to the plaintiff were caused by the negligence of the borough.

The borough claimed that all the ground under the middle span was outside the limits of the highway. The plaintiff claimed that it was, at the time of the accident, within the highway, either because it was within the limits of the ancient town road as originally laid out, or because it had become highway by dedication and acceptance. The only evidence to show how wide the town road was laid out and where its lines were, was the evidence from usage. There was much evidence to show a dedication.

Upon all the evidence in the case the court found that so much of the ground under the middle span as was not included within the original layout of the town road, if any, had been dedicated to and accepted by the public, and that it was all within West street at the time of the injury.

For the purpose of proving his claim in this part of his case the plaintiff offered in evidence, in connection with much other evidence, certain votes of the borough which were objected to by the counsel for the borough and admit-

ted by the court, but which; in the view taken of the matter by the court, it is not necessary to state.

The counsel for the borough claimed, as matter of law—

1. That the plaintiff could not recover because of the variance between his proof and allegation in that the complaint alleged the neglect of duty by the borough in the following words: "Said highway under and about said bridge was defective in this—that it had been so raised and filled in by said borough at, about and under said railroad bridge, and was so high and so near the said bridge over the same as to interfere with, obstruct, impede and render dangerous and unsafe, ordinary public travel on said highway," and that the proof showed that the road under the center span had been allowed by the borough to be raised and filled in by earth and sand washed there by rains and accumulated there in other ways, and that the borough had neglected to repair the road and to remove the earth and sand, whereby the road became so high and so near the bridge as to render unsafe and obstruct ordinary public travel thereon.

2. That the land under the center span could not in such a short space of time between the opening of it to public travel and the time of the accident, in the absence of any written proof of a grant of the land by the railroad company to the public for a highway, be held to be a highway by dedication.

3. That if the land under the center span was a highway by dedication, so that the duty of maintaining and keeping it in repair was upon the borough, such duty was confined solely to the road-bed, and did not extend to the bridge over the highway, or to the highway in reference to the bridge above it.

4. That if, under the facts in this case, either of the defendants were liable, it was the railroad and not the borough.

5. That under General Statutes, p. 324, sec. 30, it was the duty of the railroad company after the land under the center span became a highway by dedication, to maintain the bridge and the approaches to it, and the center span of the bridge, as the convenience and safety of public travel

upon the highway under the center span and the approaches thereto required.

6. That if, after the building of the bridge by the railroad company, the old highway was enlarged by its own act or the act of another, by taking within its limits the land under the center span, the duty of the company was then also enlarged and increased, and it became its duty to take off iron girders or wings on the bottom of the bridge at the top of the center archway, or some part of them, or in some other way maintain the bridge and the center arch thereof as the convenience and safety of public travel underneath required.

The plaintiff claimed that upon the facts proved both the borough and the railroad company were liable for substantial damages, but the court held that the borough only was liable for substantial damages and rendered judgment for two thousand dollars against the borough and for one dollar against the railroad company. The plaintiff and the borough appealed.

*S. Tweedy*, for the plaintiff.

It is conceded that the plaintiff is entitled to substantial damages from one or the other of the defendants. If the court should decide that the borough is not liable then the plaintiff's right to damages from the railroad company is saved by his appeal. He has no further interest in the matter than to have the judgment for nominal damages against the railroad company set aside if the court shall hold that company and not the borough liable. All the essential elements of a liability under the statute, by force of which the plaintiff claims damages, here exists. Gen. Statutes, p. 232, sec. 10. The plaintiff was injured in person by means of this defective road, without any contributory negligence on his part, and the statute fixes a liability for an injury so received upon the party bound to keep such road in repair. That party is clearly the borough, through whose negligence the road was made defective, and the injuries caused. Such would seem to be a proper construction of that statute, and

in that manner has the court interpreted it. No question
is raised by this appeal as to any claimed contributory neg-
ligence on the part of the plaintiff, and the court below has
determined that question.

G. *Stoddard* and *H. W. Taylor*, for the Borough of Dan-
bury.

1. Under the facts of this case the railroad company,
and not the borough, was by law required to keep the
space sufficiently clear under this bridge to accommodate
public travel. It is a just principle of interpretation that
"charters of corporations which confer exclusive privileges
for the particular advantage of the grantees, are to be con-
strued liberally for the benefit of the public and strictly as
against the corporations." By availing itself of the right to
cross this highway the railroad company came under the ob-
ligations imposed upon it by the law which conferred the
right, namely, the obligation of restoring "said highway
thus intersected to its former state, or in a sufficient man-
ner not to impair its usefulness." Gen Statutes, p. 323, sec.
28. The 30th section of the same statute also requires a
railroad company to "make and maintain such bridges, abut-
ments, tunnels, arches, excavations, embankments and ap-
proaches as the convenience and safety of the public travel
upon said turnpike, highway or street may require." The
obligation imposed by section 28 is not discharged by the
fulfilment of the original duty, but it is a continuing one, to
be exercised whenever the necessity, convenience or safety
of the public demands it. The case of *English* v. *New Hav-
en & Northampton Co.*, 32 Conn., 243, contains this general
statement as to the policy of our law: "The excavation
through Temple street was made by the corporation to whose
rights and obligations the defendants have succeeded, by au-
thority of their charter, and it is eminently just and proper,
and in accordance with our legislation, to require that com-
pany, or the defendants, to bridge the excavation to any ex-
tent which public convenience and necessity might then or
at any time require. * * * In view of the policy of our leg-

islature to charge such corporations with the duty of restoring highways, when disturbed, to their former state of usefulness, we think it entirely clear that they intended to provide that the highway in question should be so restored, * * * and as a continuing duty." And this statement of the general policy of our law is amply sustained and enforced in the cases of *New Haven* v. *New York & New Haven R. R. Co.*, 39 Conn., 132, and *Burritt* v. *New Haven*, 42 Conn., 198. This question has been distinctly raised in other states, and the weight of authorities supports our proposition. In *Roberts* v. *Chicago & North Western R. R. Co.*, 35 Wis., 679, the court say: " Where a statute requires a highway, over which a railroad is constructed, to be restored ' to its former usefulness,' the railroad company must so restore it that its use by the public shall not be materially interfered with, nor the highway rendered less safe or convenient to persons and teams passing over it." This certainly means that the future use of the highway shall not be interfered with by reason of the railroad company's having laid its track across it. This is the doctrine in *People* v. *Chicago & Alton R. R. Co.*, 67 Ill., 118; and the same is held in *Eyler* v. *County Commissioners*, 49 Md., 257, although by a statute the obligation is in express terms only not to obstruct the safe use of the highway. The case of *Cooke* v. *Boston & Lowell R. R. Co.*, 133 Mass., 185, is very similar to the case at bar. In *Wellcome* v. *Leeds*, 51 Maine, 313, where a statute provided that " a railroad shall be so constructed as not to obstruct the safe and convenient use of the highway," the obligation of the company was held not to be limited to the original construction. " It must keep the railroad so constructed at all times. Its obligation so to do is continuing." In *Keefe* v. *Sullivan County R. R. Co.*, 63 N. Hamp., 271, the court decides that a provision in the charter of a railroad corporation, that the road shall be so constructed as not to obstruct the safe and convenient use of any private way which it crosses, imposes upon the corporation the duty of maintaining a safe and convenient crossing for such private way." In *City of Newton* v. *Chicago, Rock Island & Pacific R. R.*

*Co.*, 66 Iowa, 422, it appears that, by a statute of Iowa, " any corporation may raise or lower any turnpike, plank road or other highway for the purpose of having its railway cross over or under the same ; and in such cases said corporation shall put such highway, as soon as may be, in as good repair and condition as before such alteration." The court say : " The defendant contends that the repairs contemplated by the statute are original repairs : that is, such as are necessary in the construction of the crossing to put it in a proper condition. But it was held in the suit of *Farley* against the same company, 42 Iowa, 237, that the company was bound to keep the crossing in a safe condition. * * * Under that ruling it appears to us that the defendant's position cannot be sustained." In *Cott* v. *Lewiston R. R. Co.*, 36 N. York, 217, it appears that a statute empowered a railroad company to construct its road across any stream of water, but required it to restore the stream " to its former state, or to such a state as not unnecessarily to have impaired its usefulness." The court say :—" The plain intention of the statute is, that the company shall restore the stream to its former proprietors as little impaired in its utility as practicable, so as to subject such owners to no loss or injury, or at any rate to make the loss as trifling as possible. To effectuate this clear intent, it must be held that the company must not only in the first instance make the channel as perfect as practicable, but continue and preserve it in that state as long as it continues to divert the water from its natural channel. * * * This legislative permission is given, charged with the duty of restoring the stream as near as practicable to its former usefulness. This is not by any means done if it is restored burdened with the charge of keeping the new channel in repair. That is a burden to which the previous enjoyment of the stream was not subject." In *People* v. *N. York Central R. R. Co.*, 74 N. York, 305, in construing a statute similar to ours the court says: " Here the duty of restoring is enjoined by statute, and, as we have seen, the duty is continuous." See also 2 Wood's Railway Law, 969, 976; *Chicago, R. Island &*

*Pacific R. R. Co.* v. *Moffit*, 75 Ill., 524. Before the bridge was placed across the highway it was unquestionably the duty of the town to keep in repair that portion of the highway which now lies under the bridge. It cannot be that the legislature, in granting to railroad companies the right to cross highways either at grade or above or below grade, intended thereby to impose upon those whose duty it had previously been to keep such highway in repair, the additional burden of keeping it, not in such a state of repair as would formerly have been ample for the convenience and safety of public travel, but in that state of repair which the presence of, and the relation of the highway to, the bridge demanded. This bridge is no natural obstruction which the town ought to provide against, but is a purely artificial structure, which is necessary in the construction and operation of the railroad. *City of New Haven* v. *N. York & New Haven R. R. Co.*, 39 Conn., 132. Even should it be held that the town was under obligation to keep that portion of the highway under the bridge in its former state of repair, still justice would seem to require that whatever additional burden of repair the presence of the bridge might demand, should be assumed by the railroad company for whose benefit the bridge was constructed. The state of repair in which the road-bed was at the time of the accident in question would in former times have been ample; if it was inadequate when the accident occurred, it was solely because of the presence of the bridge above it. Should the taxpayers of the town be required to bear the additional expense of digging out and carrying away the earth which had accumulated under the bridge, in order that such bridge might be maintained at a safe height above the highway? This is an expense rendered necessary by the presence of the bridge solely. The railroad company should bear it.

2. But the railroad company is liable, under Gen. Statutes, p. 232, sec. 10, which provides that " any person injured in person or property by means of a defective road or bridge, may recover damages from the party bound to keep it in repair; and when the injury is caused by a structure legally

placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor." *Allen* v. *N. Haven & Northampton Co.*, 50 Conn., 217; *Lee* v. *Barkhampsted*, 46 id., 217. The whole question resolves itself briefly into this: Section 28, above alluded to, imposed upon the railroad company the duty of restoring the highway to its former state so as not to impair its usefulness. This, as we have seen, is a continuing obligation. Section 30 imposes upon the railroad company the additional obligation of making and maintaining bridges, abutments etc., whenever the railroad shall cross over or under the highway; and section 10 provides that when the injury is caused by a structure legally placed on the highway by a railroad company, it, and not the party otherwise bound to keep the road in repair, shall be liable therefor. It is difficult to see how the legislature could have more clearly fixed the liability in a case like the present, than these three acts show it to have done.

*R. E. DeForest* and *J. E. Walsh*, for the New York & New England Railroad Company.

1. There are but two conceivable grounds upon which any such liability of the railroad company could be claimed: 1st, upon general principles of the common law, and 2d, by virtue of the statute law of the state. It is too plain for argument that upon the facts found no common law liability is shown. Nobody denies that it had a right to construct and maintain its road over this highway. It appears as a fact that in so doing it has been guilty of no negligence. Now at common law of course there could be incurred no liability for damages to any one by simply doing without any negligence a thing in itself lawful. The question of negligence is here a question of fact, and the direct finding that there was none is conclusive upon that point. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Park* v. *O'Brien*, 23 id., 347; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 297. But if it were a question of law to be reviewed by this court, upon the whole record every circumstance revealed emphati-

cally repels the charge. The bridge was a structure in itself substantial and safe. It was built at a safe height above the road. The only danger was occasioned by the subsequent filling in and raising up of the roadway under the bridge, and in that way only the plaintiff's injuries were occasioned. All this is found. Besides all this, the railroad company obtained and was guided by the advice and direction of the borough through which the highway ran, the people and authorities of which were most cognizant of the amount and nature of the public travel and most interested in securing its greatest safety and convenience. What more could the company have done in the exercise of the highest possible degree of vigilance and caution?

2. It is said however that the company is liable by virtue of the statute law. Section 30, page 324, and section 10, page 232, of the General Statutes are relied upon to sustain this claim. Section 30 provides that " every railroad company which may locate and construct a railroad across any turnpike, highway, or public street, shall construct it so as to cross over or under the same; and may, under the direction of the railroad commissioners, raise or lower the same at said crossing or change the location thereof, and shall make and maintain such bridges, abutments, tunnels, arches, excavations, embankments and approaches as the convenience and safety of the public travel upon said turnpike, highway or street, may require; but the railroad commissioners may, upon due notice to said company, and to the selectmen of the town, or mayor of the city in which said crossing is situated, direct such company to construct its railroad at such crossing upon a level with the turnpike, highway or street." Has not the railroad company fully complied with that statute? Has it not constructed its road so as to cross over the highway? Has it not made and maintained such a bridge and approaches as the convenience and safety of the public travel on the highway required? The finding of the court shows that it has. Neither the bridge, nor its abutments, arches or approaches, caused this injury or made the

crossing unsafe to any one. It was unsafe only from the defective condition of the roadway which the statute does not in this case require the railroad company to keep in repair. The roadway each side of the bridge was of course in a certain sense an approach, but certainly it cannot be seriously contended that it was an approach within the meaning of this statute. *Whitcher* v. *City of Somerville*, 138 Mass., 454. And it is absurd to insist that maintaining the bridge so as the safety and convenience of the public travel required, legally involved raising and lowering it with every change in the grade of the roadway beneath. The bridge is originally erected at a perfectly safe and convenient height above the highway. It is a substantial, durable, immovable structure. The expense of changing its elevation necessarily involving changes for long distances in the grade of the railroad track and embankment and the stone foundations, would in most instances be nearly as great as its original cost. The grade of the road below on the contrary is susceptible of easy and inexpensive alteration. If by accident, the wrongful act of any person, or the negligence of the party charged with the duty of repairing the highway, the grade of the roadway under the bridge is so much raised as to make the passage way unsafe, the danger can be easily, speedily and inexpensively obviated by a reduction of that grade. This however, as we have seen, is no part of the defendant railroad company's duty, but the duty of the borough. Gen. Stat., p. 232, sec 7. The railroad company has no right even to change that grade, originally, or subsequently, if at all, without the consent of the railroad commissioners. It would then be an intolerable injustice to compel the railroad company to change the elevation of its bridge, originally safely and properly constructed, to accord with every whimsical or accidental alteration of the grade of the highway. The borough contends again that the company is rendered liable by section 10, page 232, of the General Statutes. It reads as follows:—" Any person injured in person or property by means of a defective road or bridge, may recover damages from the party bound

to keep it in repair. * * * And when the injury is caused
by a structure legally placed on such road by a railroad
company, it, and not the party bound to keep the road
in repair, shall be liable therefor." Two things are here
spoken of—defective roads and defective bridges. The
reference to them is in the alternative and not in com-
bination. It is a bridge by itself that is supposed to be
defective, or it is a road by itself that is supposed to be
defective; and there is no reference here to a danger or
defect from a combination of bridge and road. Now is it
claimed that this is a case of a defective bridge under this
statute? This claim is utterly untenable, because, in the
first place, this part of the statute has no reference to and
does not affect bridges built over highways by railroad com-
panies. It was passed before railroads were invented or
imagined. It appears in the statutes of 1672. It obviously
has reference to bridges which constitute a part of the
highway itself, and which, with the road leading up to them
and from them, the public travel on; such as toll bridges,
bridges maintained by turnpike companies, and others.
And second, this claim is untenable because, if by any pos-
sibility this part of the statute relates to bridges over high-
ways, still it would have to appear that the bridge was out
of repair, and that for want of such repair the injury was
occasioned. For this statute simply declares the remedy
for injuries arising from neglect to perform the duty of re-
pairing roads—a duty existing by virtue of the statute only.
*Hewison* v. *City of New Haven*, 34 Conn., 136; *Allen* v. *New
Haven & Northampton Co.*, 50 id., 217. Here there was no
want of repair, and therefore there could be no liability
under the statute. It may, however, be insisted that the
latter clause of the statute fixes the liability. This portion
of the statute has no reference to a bridge. Here it is the
road that must be defective, and the defect that causes the
injury must be a structure legally placed on such road by a
railroad company. The legislature did not at all contem-
plate the case of a bridge or any other structure suspended
over the road, but only those structures on the road—

on the surface of the road—such as ties, rails and planks, whose lawful presence there prevents the town or borough, or other person or corporation charged with the duty of keeping the roadway in repair at that point, from performing their duty. It is upon this ground that the liability in such case is transferred to the railroad company—the ground that because the railroad has a lawful right to place and maintain that structure there, therefore the town, borough or other party cannot, and therefore is not required to keep the road in a safe condition at that point. *Allen* v. *New Haven & Northampton Co.*, 50 Conn., 219. This is an entirely different case. We have no structure on the road here. There is nothing whatever to interfere with the grading and repair of the roadway under the bridge by the borough, and the borough alone has the right and is by law bound to do that grading and repairing. *Potter* v. *Castleton*, 35 Verm., 435; *Willey* v. *Portsmouth*, 35 N. Hamp., 313; *Aston* v. *McClure*, 102 Penn. St., 322. The injury here is not caused at all by the bridge, but by the unduly elevated and therefore defective condition of the road below. If, however, it could be said that this bridge was a structure on the road within the meaning of the statute, and that by reason of it the road was defective, and in consequence of such defect this accident happened, yet the railroad company would not be liable in the absence of all negligence. The company in such case would not be liable, except in the same manner and to the same extent that the borough, town, or other person or corporation would ordinarily be liable for negligence. *Bill* v. *City of Norwich*, 39 Conn., 222 ; *Allen* v. *N. Haven & Northampton Co.*, *supra*. Here the court finds there was no negligence. This imports the absence of everything that might imply negligence—even notice of the defect and opportunity to repair. We contend, therefore, that the railroad company was not liable by either statute, and not being liable as we have seen upon any principle of the common law, is not liable at all.

CARPENTER, J.  This is an action against the borough of Danbury and the New York & New England Railroad Company to recover damages for injuries received by coming in collision with a railroad bridge over the highway.  There was a hearing in damages upon default, and judgment against the borough for actual damages and against the railroad company for nominal damages only.  The borough and the plaintiff appealed.

Each appeal presents this question : Is the railroad company liable for actual damages?

The material facts are briefly these : In 1880 the railroad company constructed a bridge over West street, in the borough of Danbury, for the purpose of carrying the railroad over the street.  The plaintiff was guilty of no contributory negligence.  It is expressly found that the railroad company was guilty of no negligence.  The bridge was built "upon plans or directions furnished or approved by the borough," and was put at such height above the street as the borough required.  When first built the vertical space between the bridge and the road-bed was ten feet six inches; when the accident happened it was nine feet and four inches.  The difference, fourteen inches, was caused by raising the road-bed from year to year, partly from natural causes and partly from placing gravel thereon by those repairing the street.  Therein the court found the borough guilty of negligence.  The finding is conclusive in favor of the railroad company, unless the court can see as a conclusion of law from the facts stated that the company was negligent.  The supposed negligence consists either in a faulty construction of the bridge or in failing to take measures to preserve the original space between the bridge and the street.

1. Was there negligence in the construction of the bridge?  It may be that ten and one half feet is in fact a scant height for a railroad bridge over a highway; but are we justified in saying so as a legal conclusion?  We are aware of no law, statute or otherwise, that fixes the height of such bridges.  They should be constructed so as

reasonably to accommodate the public travel. What is reasonable must depend in some measure upon the circumstances of each particular case. It seems that the railroad company, its engineers and the railroad commissioners deemed the height sufficient; otherwise it would have been their duty to insist upon its being greater. The borough, in view of its liability for the highway, insisted that the bridge should be built according to its wishes, which was done. The borough then considered the height sufficient. In addition to this, the fact appears that the injury was caused, not by the bridge being too low in the first instance, but by reason of the height being practically reduced by raising the street. These facts, we think, justify the Superior Court in finding that the company was not negligent in constructing its bridge.

2. Was it negligent in failing to keep this vertical space at its original height? That could only be done in one of two ways; by raising the bridge, or by preventing the accumulation of earth upon the road-bed. Surely it will not be claimed that the company was bound to raise the bridge as the street was raised from year to year. To impose upon it such a duty would be unreasonable.

Neither was the company bound to prevent the street from being raised. The duty of repairing the street was on the borough. The company was under no obligations to see that the borough did its duty, and it had no power to control the manner of doing it. Any attempt to remove the earth and gravel placed there by the borough would have been an unwarrantable interference with its rights and duties. The borough alone could make repairs, and it alone should be responsible for doing it improperly. The court below was justified in finding that "the borough was negligent in causing or permitting the roadway under the bridge to be filled up till the space under it was too small to satisfy the requirements of common convenience and necessity."

But it is claimed that the railroad company is liable by statute. Two sections are cited as bearing upon the case:

Gen. Statutes, p. 323, sec. 28, and p. 324, sec. 30. The 28th section has more particular reference to grade cross-ings and cases where the location of the highway is changed in order that the railroad may be laid in the most feasible place. The 30th section is the one more particularly relied on. It provides that the railroad company "shall make and maintain such bridges, abutments, tunnels, arches, excavations, embankments and approaches as the convenience and safety of the public travel upon such turnpike, highway or street may require," etc. It seems to be claimed that under this statute the railroad company was bound to maintain the highway under the bridge, at least so far as to prevent the bridge from interfering with public travel. We think this is a strained and unnatural construction of this section. No word in it aptly describes this piece of road, and the whole section falls far short of imposing upon the company any such duty.

In this connection it was urged by counsel for the borough that "whatever additional burden of repair the pressure of the bridge might demand, should be assumed by the railroad company, for whose benefit the bridge was constructed. The state of repair in which the roadbed was at the time of the accident in question, would in former times have been ample; if it was inadequate when the accident occurred, it was solely because of the presence of the bridge above it. This is an expense rendered necessary by the presence of the bridge solely." This is plausible, but it is reasoning from false premises. It assumes that it was more expensive to maintain the road at its former grade than to raise it up, whereas the reverse was doubtless true. It also assumes that the inadequacy of the highway was "solely because of the presence of the bridge," whereas the finding clearly shows that the bridge was harmless, and would have remained so if the borough had done its duty properly.

It is not to be inferred, however, that the presence of a railroad will in no case impose additional burdens upon towns in maintaining highways. It may well be that their duties in that behalf will be changed or modified, and that

they will be somewhat restricted in the use of means, as in this case. Such modifications may involve some additional expense which the towns may reasonably be required to bear.

It is further claimed that section ten, page 232, of the General Statutes, which makes the party bound to keep a highway in repair liable in damages caused by any defect therein, makes the company liable under the concluding clause of that section, which is as follows: "And where the injury is caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor."

We cannot suppose that the legislature intended to make the company liable in a case like this, where the structure is a bridge over the highway, and the accident clearly resulted from the negligence of the party bound to keep the highway in repair.

The counsel for the borough also raise a question of evidence. It is insisted that the testimony, on which it is found that the borough at the time of the erection of the bridge, in view of its liability for the highway, insisted that the bridge should be built according to its wishes, and that it was so done, was inadmissible.

We are not satisfied that the statute which requires the record to show that the question was distinctly made on the trial has been complied with. A large number of votes of the borough and of the warden and burgesses were offered in evidence by the plaintiff, and objected to by the borough. Most of these votes were offered for other purposes; and so far as those purposes are concerned, the objection is not pursued. Among those votes was one passed by the warden and burgesses January 19th, 1880, as follows: " *Voted*, that the board approve of the doings of the N. Y. & N. E. R. R. Co. in building a bridge across West street." That has some tendency to establish the facts objected to; but it does not appear that the objection to the evidence was for that reason; and it cannot be presumed, for, in addition to the fact that it was offered for another purpose, and by the

plaintiff, the record discloses no attempt by the plaintiff to show that the railroad company was not liable. But aside from this, the facts must have been found mainly on other evidence. What that evidence was does not appear; neither does it appear that it was objected to.

There is no error.

In this opinion the other judges concurred.