FISHER v. CITY OF MT. VERNON.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. MUNICIPAL CORPORATIONS—OBSTRUCTION IN STREET—NOTICE.
   Where a telegraph pole overhung a street for more than a year prior to the accident caused thereby, the city is chargeable with notice of its position.

2. SAME—NEGLIGENCE—QUESTION FOR JURY.
   Whether a telegraph pole which overhung a city street rendered the highway so unsafe to public travel as to make the city liable for an injury caused thereby is for the jury.

3. SAME—CROSS-EXAMINATION OF WITNESS.
   Where defendant's witness testified that the telegraph pole against which the top of plaintiff's carriage struck was eight inches inside the curb, and did not overhang the street until at least ten feet from the ground, and that after the accident he had moved it back, a question on cross-examination, as to why he moved it back, is proper.

4. SAME—IMPUTED NEGLIGENCE—QUESTION FOR JURY.
   Where the uncontradicted testimony was that plaintiff was a gratuitous passenger in a carriage at the time of his injury, a charge that, if he was a gratuitous passenger, the driver's negligence could not be imputed to him, is correct.

Appeal from Westchester county court.

Action by Eugene Fisher against the city of Mt. Vernon. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Marshall, for appellant.

George C. Appell, for respondent.

WILLARD BARTLETT, J. The plaintiff, while riding in a hack, at the invitation of the driver, through Stevens avenue, in the city of Mt. Vernon, was injured by the collision of the top of the carriage with a telephone pole, which projected from the sidewalk out over the driveway. The foot of this telephone pole stood about eight inches within the curb line at that time. It is conceded that at some height above the pavement the pole overhung the carriageway. According to the plaintiff's witnesses, the carriage struck it at a height of seven or seven and a half feet above the surface of the street. The evidence for the defendant, on the other hand, was to the effect that a vehicle could not strike it which was less than ten feet high. The proof leaves no doubt that the carriage must have been driven close to the curb. The plaintiff is confident, however, that it did not touch the curb at the time of the accident. The driver was obliged to turn far over towards the side where the pole was in order to get by other moving vehicles. Although the witnesses speak of the side of the street as a gutter, the photographs show that it was not a gutter, in the ordinary sense. The street is macadamized in the middle, and paved on the side to a width of three and a half or four feet. This paved portion is what the witnesses denominate a "gutter." Its construction is obviously such that it is proper for drivers to use all parts of it to drive over, even right up to the curb, if the requirements of travel demand that it shall be so used; and hence the plaintiff or the driver of the hack cannot be condemned for using it, as the plaintiff was in Ring v. City of Cohoes, 77 N. Y. 83, where the court said that a gutter a foot wide was not made for the purpose of travel.

Assuming the truth of the case as presented on the side of the plaintiff, we have to inquire whether the defendant fulfilled the duty which the law imposes on such a municipality to exercise reasonable care to keep its streets and highways in a safe condition for the passage of travelers. Referring to this duty on the part of a municipal corporation, the court of appeals, in a very recent decision, has declared that the municipality nevertheless has the right to devote the sides of the street to other useful public purposes, provided it leaves an unobstructed driveway of ample width for the passage of teams. "It may construct sidewalks of a higher grade and gutters of a lower grade than the driveway, place curbing on the line of the gutters, erect hydrants, and authorize the erection of hitching posts and stepping stones, as well as poles to support the wires of telegraph and telephone lines. It may lay out grass plots on the sides of the streets, set out trees therein, and protect both grass and trees from injury by fences or other reasonable means. It may thus, to a reasonable extent and for a useful public purpose, narrow the driveway, and exclude teams altogether from the sides of the street." Dougherty v. Village of Horseheads, 159 N. Y. 154, 53 N. E. 799. From the contract with the telephone company which put up the pole, it is plain that the pole was erected and maintained with the sanction

and by the authority of the city of Mt. Vernon. It is plain, also, that the jury were authorized to find that for more than a year the pole had been in the position which it occupied at the time of the accident; and hence the defendant was chargeable with notice that it overhung the highway, so that it was likely to strike vehicles passing along the street.

It is a matter of common observation, however, that the trees on the sidewalks of a city street frequently project their branches over the roadway far enough, and low enough, to obstruct the free passage of ordinary vehicles driven close to the curb. Under the doctrine of the Horseheads Case, above cited, the right of a municipality to plant and preserve trees on the sides of a street can hardly now be questioned, even though they may thus lessen to some extent the facility of travel. But does it follow that a city may authorize the maintenance of telephone poles, which are needlessly projected from the sidewalk over the roadway, at such a height as to prevent the free passage of ordinary vehicles near the curb? I think not. While, as is observed by Vann, J., in the case cited, shade trees on the sides of streets serve a useful public purpose, adding to the taxable value of abutting property, and while, also, hydrants, hitching posts, and even stepping stones augment the usefulness of the highway as such, these objects must be properly located, with reference to the requirements of public travel, so as not to occasion unnecessary inconvenience to those rightfully using the highway. This rule was recognized in Ring v. City of Cohoes, supra, where the court was careful to point out that there was no evidence that the hydrant there in question was not properly placed where it stood. So, in the Horseheads Case, the large stone which fulfilled the functions of a curb was expressly held to have been properly placed in the position which it occupied in order to protect the adjacent trees and a grass plot from injury. Notwithstanding the right on the part of a municipality there asserted to maintain trees at the side of the highway, this may not be carried so far as to interfere with the ordinary use of the road. Thus, in Embler v. Town of Wallkill, 57 Hun, 384, 10 N. Y. Supp. 797, affirmed in 132 N. Y. 222, 30 N. E. 404, the defendant was held liable for permitting the branches of a tree to overhang the traveled portion of the highway, so that they swept the plaintiff off a load of hay upon which he was riding. The question in this class of cases is a question of degree. If a telephone pole is allowed to occupy a part of the sidewalk, by the public authorities, it should, if possible, be so placed as to offer no obstruction to travel upon the roadway. This may readily be accomplished by erecting it in an upright position, in accordance with the ordinary method. To place it otherwise, and allow it to lean over the street so that it may readily form a barrier to the passage of vehicles forced to approach the curb in meeting or passing other vehicles, is to fail in the duty of the municipality to leave an unobstructed driveway of ample width for the passage of teams. In Grove v. City of Ft. Wayne, 45 Ind. 429, the supreme court of Indiana asserts that the power of a city over its streets, and the right of the public to them, for the purposes of preservation, safe use,

and enjoyment, extends upward indefinitely. The unobstructed drive-way for the passage of teams, which the law requires a municipal corporation to preserve, certainly extends far enough above the surface to permit a city hack to pass without difficulty. In Arey v. City of Newton, 148 Mass. 598, 20 N. E. 327, the plaintiff was injured by the collision of his carriage with a hitching post which stood within the limits of a public highway; and it was held that such a post, upon or so near the road as to render travel thereon in carriages unsafe, constituted a defect, for which the municipality was liable to a traveler who was thereby injured while exercising due care on his own part. The question upon which the case turned was stated to be whether the post alleged to have been the cause of the injury to the plaintiff was in such near and immediate relation to the carriage-way that the carriageway was unsafe. A similar question arises in the case at bar. Was not the telephone pole with which the plaintiff collided so improperly placed and maintained as to make the highway at that point unsafe for public travel? The facts as presented in behalf of the plaintiff fairly raised this question. The position of the pole was such that reasonably prudent men might well anticipate danger if it remained unchanged, and hence the case was clearly one for the jury. Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401.

There are but two exceptions in this record relating to the admission of testimony, and only one of these is argued in the brief of the appellant. A witness for the defendant testified that the pole at the time of the accident must have been at least eight inches inside the curb, and that it did not at any time lean out over the curb line until you got up ten feet or more; at least ten feet. Upon cross-examination he was asked why he said that the pole was eight inches inside the curb, and answered: "Because, at the time I moved it, I measured it. At the time I pulled it back in I measured it." Plaintiff's counsel then asked him: "What did you pull it back for?" This question was objected to, the objection was overruled, an exception was taken, and the witness answered irresponsively: "I can't tell when I did move it." A little later, however, but in answer to a question to which no objection was made, he said that he moved the pole back to escape the trees and clear the curb line. We do not think that there was any error in allowing this witness to be asked what he pulled the pole back in for. The fact that the pole had been moved had already been proved without objection. Indeed, the statement was volunteered by the witness without any question directly calling for it. In view of his previous testimony, to the effect that the pole did not lean out over the curb line until you got up at least ten feet, it was certainly within the limits of legitimate cross-examination to inquire what was his reason for changing its position, if such were the fact. By this inquiry, the cross-examining counsel might properly endeavor to weaken the force of that statement.

The only exceptions to the charge relate to the instructions concerning the contributory negligence of the driver of the carriage in which the plaintiff was hurt. The court told the jury that, if they

found that the plaintiff was a gratuitous passenger, then no negligence of the driver could be imputed to him, but that it was for them to say whether he was a gratuitous passenger or not. This instruction was clearly correct. There was no testimony to contradict the statement of the plaintiff and that of the driver to the effect that the plaintiff was enjoying a free ride, at the invitation of the driver, when the accident occurred. On this, as well as on all the other issues in the case, the verdict finds ample support in the evidence, and, as no error of law was committed on the trial, the judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.