COATSWORTH v. LEHIGH VALLEY RY. CO. et al.

(Supreme Court, Special Term, Erie County. September, 1911.)

1. EMINENT DOMAIN (§ 137*)—DAMAGES—TAKING OF PART OF TRACT—"PARCEL."

That the fee of the street where a railroad bridge is built across it, together with the fee thereof between that point and a distant block abutting on the street, is owned by the owner of such block, and not by the owners of the lots abutting at the point of the bridge and between it and such block, does not make the land under the bridge and such block one parcel, within the rule as to damages to the residue where part of a tract is taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 367–369; Dec. Dig. § 137.*

For other definitions, see Words and Phrases, vol. 6, pp. 5166–5168.]

2. EMINENT DOMAIN (§ 149*)—NOMINAL DAMAGES.

The construction and operation of a railroad bridge across a street not being an invasion of any substantial right of one owning merely the fee of the street, and not the abutting lots, his damage, the difference in value of his land with and without the bridge, considering it merely in the light of an obstruction, or as imposing an additional servitude on the fee, is nominal.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–331; Dec. Dig. § 149.*]

3. EMINENT DOMAIN (§ 265*)—ALLOWANCE—DISCRETION.

Where, were the action one at law, plaintiff would, under Code Civ. Proc. § 3248, be entitled to costs as matter of right, title to real estate being involved, and he being adjudged ownership of the fee, with nominal damages, it is a proper exercise of discretion to award him costs, though the action is an equitable one; he having been obliged to come into court to establish his disputed title.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 265.*]

Action by Reuben H. Coatsworth against the Lehigh Valley Railway Company and another. Judgment for plaintiff.

Simon Fleischmann, for plaintiff.

Kenefick, Cooke & Mitchell, for defendants.

MARCUS, J. The plaintiff owns a rectangular block of land in the city of Buffalo bounded on the north by Otto street, on the east by Alabama street, on the south by Perry street, and on the west by Hayward street. In 1882 the Lehigh Valley Railway Company purchased for the purpose of the construction of part of its main line the land on both sides of Alabama street north of Otto street. Across this property in 1884 the Lehigh Valley built its main line into the city of Buffalo crossing Alabama street approximately at right angles on an overhead structure, pursuant to the provisions of the railroad law (Consol. Laws 1910, c. 49), with the authorization and consent of the city authorities.

Alabama street has been a public street of the city of Buffalo since 1835. The plaintiff's claim is that his premises have been injured and depreciated in value in a large amount by the construction and maintenance of the bridge, superstructure, and abutment on said premises, and by their unsightliness and by the operation of defendant's railroad therein by reason of smoke, gas, noise, and vibration, and will

be injured and depreciated by the continuance thereof, and by the separation and taking of plaintiff's land in Alabama street and his rights therein.

[1] Plaintiff contends that his block of land abutting on Alabama south of Otto street, and that portion of Alabama street north of Otto street, should be treated or considered as one entire piece or parcel of land; that the bridge imposes a new and additional servitude upon the soil of that portion of the street over which it crosses; that this constitutes a "taking" of such portion, for which he is entitled to compensation; and that, in view of his ownership of said block of land and the soil of the street north of Perry street, this "taking" of a few feet of Alabama street amounts to a subtraction from so much of his premises, as part or parcel of it. Therefore, he argues, he is entitled to recover not only the value of the small portion of the street actually taken (subject, of course, to the public easement and the private easements vested in the defendant), but also any damages resulting to the residue, including those which will be sustained by reason of the use to which the portion taken is to be put by the company. Kirkover Case, 176 N. Y. 301, 68 N. E. 366.

This argument seems drastic, fallacious, and illusory. The notion that the soil of a public street in front of one person's lot may be treated as a component part of a lot owned by another appears to be rather startling, and it finds no support in judicial decisions, so far as we are aware. If that were true in legal theory, then the soil in front of every person's lot upon a short street might be deemed and held to be a portion of one lot belonging to the person who owned the fee of the street.

The argument that, in a legal or technical sense, the plaintiff's block of land constitutes a "residue" of the soil of the street in front of defendant's lot, seems contrary to reason. The land in the street, considered apart from the lot adjoining, is not taxable, nor is it assessable for a local improvement. Smith v. Buffalo, 159 N. Y. 428, 54 N. E. 62; O'Leary v. Glens Falls, 200 N. Y. 220, 93 N. E. 513; People ex rel. Topping v. Purdy, 143 App. Div. 389–394, 128 N. Y. Supp. 569.

Such land cannot therefore be deemed a part or portion of a distant lot, as constituting one entire piece or parcel of land.

The word "parcel" is defined as a contiguous quantity of land in possession of, or owned by, the same person; part of an estate; and may be synonymous with "lot." 29 Cyc. 1557.

It has been remarked that:

"According to the common, ordinary use of the word 'lot,' it cannot be held to designate land in an open, public street. The fee of the street is of such inconsiderable value that the owner thereof is rarely, if ever, spoken of as the owner of the street. The public, represented by the city, has the paramount right in the streets, and may, with greater propriety, be called the owner of the streets." Schenectady v. Trustees, 144 N. Y. 241, 240, 39 N. E. 67, 68, 26 L. R. A. 614.

So in the same general sense it may with equal propriety be said that, as between the abutting owner and the owner of the bare fee of the street, the land in front of the lot belongs to the former rather than to the latter, since the abutting owner possesses private rights,

advantages, or easements appurtenant to his lot which arise by operation of law or as a consequence of his conveyance, by reason of contiguity to the street, which rights are peculiar to himself and cannot be exercised by such fee owner. These street rights of an abutting owner are not originated by grant in terms of such incidental rights, and their existence need not be established by conveyance in specific form, but arise from his ownership of contiguous property. Donahue v. Keystone Gas Company, 181 N. Y. 315–321, 73 N. E. 1108, 70 L. R. A. 761, 106 Am. St. Rep. 549.

In view, therefore, of the nature and character of the property in the bed of the street, the plaintiff's block of land cannot properly be considered as a residue of the land beneath the bridge, and it follows that the rule stated in the Kirkover Case is inapplicable to these conditions.

[2] In Jones v. Railroad Company, 151 Pa. 30, 25 Atl. 134, 17 L. R. A. 758, 31 Am. St. Rep. 722, it was held that the construction of a bridge to carry the tracks diagonally across the intersection of two streets, covering land the fee of which was in the owner of a corner lot, imposes an additional servitude upon his property, for which he is entitled to damages. The defendant owned the diagonally corner lots, built abutments on its own land at each corner, and threw a bridge from one abutment to the other; the height of the bridge above the street being 23 feet. The bridge overhung no land except what was within the limits of the streets. The plaintiff owned a dwelling house situated at one of the other corners. It was held: That the only element of damages was the additional servitude imposed upon plaintiff's property, such as the exclusion of light and air from his dwellings, and thus causing a diminution in value. That the possibility of the vacation of the streets may be so remote as not to be worth considering; but the extent to which the new servitude really injures the property is a question for the consideration of the jury. That the alleged obstruction to access to the premises was not supported in the least degree by the evidence; "there was in fact no pretense that any obstruction existed in the streets or on the surface." "The only legal ground of complaint grows out of the overhanging of so much of the land to which plaintiff has title as is occupied at the surface by the streets. This is a new servitude which, standing apart from all other considerations, except such as grow legitimately out of the character of the bridge and its effect upon the plaintiff's dwelling and lot, constitutes the ground for a recovery. The question is: What has the defendant added to the public easement? What new burden has it put upon plaintiff's property by overhanging the intersection with its bridge? The answer furnishes the correct measure of the plaintiff's injury, and of his right to compensation."

It was held, also, that comparison of the value of the property before and after the road was built is not the proper method of fixing the damages in such a case, since the mere proximity of a railroad may render dwelling houses less desirable, and diminish their market value without imposing any liability on the company.

In addition to plaintiff's ownership of the fee of the street, he also

possesses, in common with all abutting owners, the easements of light, air, and access to his premises. For the owner of a lot abutting on a public street has, as appurtenant to the lot, and independent of the ownership of the fee of the street, an easement in the street for admission of light and air to his lot; which easement is subordinate only to the public right in the street. To deprive him of, or materially interfere with, his enjoyment of the easement for any public use not a proper street use, is a taking of his property within the meaning of the Constitution. Rights or easements of this character are not special or peculiar to the fee owner, but may be equally claimed by every abutting owner, since they arise by operation of law from contiguity of the lots, and are just as absolute in the one case as in the other, though, technically speaking, they are not susceptible of ownership "in fee." In re Seaside El. R. Co., 83 Hun, 143, 146, 31 N. Y. Supp. 630.

These easements extend beyond and are larger than the mere portion of the street directly in front of the abutter's premises, to a reasonable extent. Hindley v. Met. El. R. Co., 42 Misc. Rep. 65, 66, 85 N. Y. Supp. 561.

Access to the premises is not in any degree obstructed nor is there any proof of any material or substantial obstruction to the public right of free passage in the usual, common, or ordinary modes, or for the purposes a city street is designed. In so far as it may constitute an obstruction to lofty vehicles or to wagons with high loads, such as hay or barrels, and be a danger or peril to a driver thereon, such obstruction or danger may afford a ground of complaint by the traveler particularly concerned, and is not one peculiar to the plaintiff alone, as fee owner of the street. So far as it appears, no one has had reason to complain of the inadequate height of the bridge, though the city may be held liable for any damage caused by coming in contact with it. Embler v. Town of Walkill, 132 N. Y. 222, 30 N. E. 404; Fisher v. Mount Vernon, 41 App. Div. 293, 58 N. Y. Supp. 499.

The bridge must be constructed at a sufficient height above the highway properly to accommodate the amount and character of the travel upon the highway, and what is reasonable must depend in some measure upon the circumstances of each case. Gray v. Danbury, 54 Conn. 574, 10 Atl. 198; Cook v. Boston R. Co., 133 Mass. 185.

A person cannot maintain a private action for a mere obstruction of a street or highway by which he is injured only as a member of the public generally, as where a person, although an abutting landowner, is not affected as to his right of ingress and egress to and from his property, but only as to his use of the street in common with the rest of the public; but, if he sustains a special injury different from that of the public generally, he may recover therefor, as where the railroad is so constructed in front of abutting property as improperly to obstruct the owner's right of ingress and egress. 33 Cyc. 356.

But, in order to warrant a recovery as for obstruction of access, there must be a real and substantial obstruction resulting from the structures erected by the corporation from which damages are claimed. 15 Cyc. 749.

The servitude imposed by the existence of the highway follows the title to the soil upwards from the surface so far as may be necessary for the safety and convenience of the public, and the owner is precluded from the exercise of acts of ownership in hostility to or inconsistent with the servitude so imposed. The permission of the municipality to cross one of its streets is an authority to enter within the limits affected by the public easement and in subordination to it. The grantee must impose no new servitude upon the land. If he does he takes not only what the city had to grant, but he takes from the owner in addition. Jones Case, 151 Pa. 30, 25 Atl. 134, 17 L. R. A. 758, 31 Am. St. Rep. 722.

It is not evident that the existence of the bridge, alone considered, causes any appreciable damage to plaintiff's property, though it may constitute an additional servitude upon the street, since it does not amount to a substantial obstruction. The claim for damages is based upon the use of the bridge. If it were used for horse cars, we suppose the plaintiff would hardly claim damages on account of such a use. And, if it were used for electric cars, there would be no smoke, gases, and so forth. But, it is insisted, that the operation of locomotives and cars by steam does cause damage to his property by diminishing its value.

In the first place, it should be observed that the plaintiff has failed to establish any claim for fee damages on account of deprivation or impairment of the easements of light, air, or access. None of the tenants or occupiers of the houses were produced to testify as to the amount, quantity, or extent of the smoke, gases, soot, or dust emitted from or caused by the locomotives and cars while going over the bridge, or as to the injurious effects of any of these elements upon the houses or their occupants. Counsel speaks of "vibration"; but there is no evidence as to how far or how much the near houses in the block were shaken by reason of vibration of the bridge while the trains were crossing it. Counsel also refers to the noises created by the trains; but that element cannot be taken into consideration in estimating the fee damages. Consequently the matter of fee damages must be eliminated from the case and disregarded.

The plaintiff contends, nevertheless, that defendant is liable as a trespasser upon his fee in the street, and that he is entitled to recover as consequential damages the diminution in value of his block of land alleged to have been caused by the presence of the bridge and the operation of trains over it. This contention is based upon the theory (which is not true either in law or fact) that the locus in quo is a component part of his land south of Otto street, as constituting one entire parcel, notwithstanding it does not abut upon the portion of the street appropriated. And the court is requested to take into consideration the fact that locomotives emit more or less smoke, soot, and gases while crossing the bridge, and that the trains produce loud and disagreeable noises and vibrations, all which, as his witnesses testify, have resulted in depreciation of the value of his property.

The entry of the defendant upon or over the street was under authority of law; the bridge is not a nuisance, either public or private,

but is a public highway; nor does it interfere with the surface of the street or obstruct its free passage. The owner of the abutting property (who in this instance happens to be the defendant) does not complain. Plaintiff is not and cannot be in possession of the public streets; he simply owns the soil, the valuable qualities appertaining to which have been attached to the adjoining property. The fee cannot be sold under ordinary circumstances whatever. No person buying it would acquire any beneficial interest therein. He would simply hold a title to a piece of land from which he could derive no benefit and in which he could have no rights of enjoyment, but which would be devoted entirely to the use and enjoyment of the adjoining landowners. People ex rel. Topping v. Purdy, 143 App. Div. 389–394, 128 N. Y. Supp. 569.

The fee owner may be said to be in constructive possession of the street in front of his premises. Little v. Denn, 34 N. Y. 457–458; Hussner v. Brooklyn City R. Co., 30 Hun, 409, 411.

But not so as to the street in front of another man's premises—unless it is permissible in these days of reality to indulge in the luxury of legal fiction. However, it is unnecessary to hold that plaintiff was in constructive possession, or that the form of action for trespass could have been maintained at common law, since every invasion of another's right amounts to a trespass in a general sense. Kernochan Case, 128 N. Y. 563, 29 N. E. 65.

The plaintiff bases an enormous claim for consequential or indirect damages upon a bare title to the fee of a few feet of land under the bridge, which is of little or no value, and which may be taken from him by the city upon payment of a nominal sum. In re City of New York (Decatur Street), 196 N. Y. 286, 89 N. E. 829.

If he had not owned the fee, he could claim nothing; and yet it is difficult to perceive any sound or substantial reason for the distinction, since in either case the real damage sustained may be the same substantially. Curious it is that a railroad, even one operated by horse power, is not a proper street use, *as regards the fee owner,* but is perfectly so in respect of a mere abutter. Forbes Case, 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453. In other words, it *is* a proper street use, if full compensation be made to the fee owner for the damage to his adjoining land. Rasch v. Nassau Elec. R. Co., 198 N. Y. 385, 91 N. E. 785.

But a steam railroad may lawfully operate in the street and cause serious damage to an abutter's property, and he must bear the consequences uncomplainingly, unless he is also a fee owner. And yet his damage may be as great as that sustained by his neighbor, who has had the foresight to acquire this very valuable, profitable, helpful, serviceable fee of the street in front of his premises. Still the common law is founded on the principles of justice and is said to be the "perfection of reason."

The theory is that the railroad is an additional burden to the easement which *as against the owner in fee* the public had previously acquired (Kellinger v. Forty-Second St. & G. St. Ferry R. Co., 50 N.

131 N.Y.S.—20

Y. 210); but (in legal fiction) the railroad is no burden whatever to a mere abutter, though it is conceded that "it is an appropriation of the highway for a new and distinct purpose, entirely foreign from its original purpose." Craig v. Rochester City & B. R. Co., 39 N. Y. 408.

In view of the fact that the plaintiff, if he were *not* the fee owner, could not recover these alleged damages, we are unable to perceive any good reason why the mere ownership of this bare, skeletonized, elusive, and somewhat mysterious, fee should be used or employed by the court as a peg to hang them upon. A mere abutter across the road, though he suffered the like injury, would be remediless. The court is not therefore disposed to take the responsibility of extending the general doctrine applicable to adjoining fee owners to a case of this character, based upon the theory of a technical trespass upon land and resulting in consequential damages to other and distinct property distant from the locus in quo; and thus to widen and further enlarge the unjust distinction already existing between fee owners and simple abutters. And since the abutter *cannot,* the fee owner *ought not* to be permitted to recover the damages resulting from the operation of the railroad across the bridge; there being no substantial difference between the two cases.

It may be remarked here that the proximity of the railroad to the plaintiff's premises must, necessarily, have entered into the opinions of the witnesses in making their estimate of the diminution in value of the neighboring property, since it was not possible to separate and apportion the amount, quantity, or extent of the smoke, soot, dust, gases, and noises coming from the defendant's property and that emitted by the locomotives while crossing the plaintiff's "fee," or to entirely exclude from the mind the injurious consequences arising from the presence and operation of the railroad upon the defendant's land. Under such circumstances, how can a comparison of values before and after the construction of the railroad be the proper method of ascertaining the damages caused by the operation of the railroad over the plaintiff's fee? Jones Case, 151 Pa. 30, 25 Atl. 134, 17 L. R. A. 758, 31 Am. St. Rep. 722.

That plaintiff's action is an attempt to predicate an enormous claim to purely consequential damages on a fiction—that is, on a naked fee to a public street—to serve as a nexus to connect plaintiff's property south of Otto street with that portion of Alabama street crossed by defendant's bridge, and thus justify the claim of a "taking" by defendant of part of an entire tract.

As a practical matter, without regard to legal fictions or theoretical arguments, the defendant's bridge does not involve the invasion of any substantial right of the owner of the fee of Alabama street north of Otto street, and it seems difficult to consider the claim of plaintiff seriously, based solely on legal fiction and theory and divorced from its practical side.

However, the conclusion arrived at is that the defendant is not liable for the consequential damages claimed, but that plaintiff is entitled to recover the difference in value of his land with the bridge present and its value with the bridge away or absent, considering the bridge

merely in the light of an "obstruction," or as imposing an additional servitude upon the fee. This difference appears to be nominal.

[3] Judgment awarded to the plaintiff adjudging his ownership of the fee with nominal damages. If this were an action at law, the plaintiff would be entitled to costs as a matter of right, because the title to real property was involved, but it is held that section 3248 of the Code does not apply to equitable actions. Law v. McDonald, 9 Hun, 24; Black v. O'Brien, 23 Hun, 82.

Still, as the plaintiff was obliged to come into court to establish his disputed title, we think it is a proper exercise of discretion to award him costs.